# Third District Court of Appeal

## State of Florida

Opinion filed February 27, 2019.
Not final until disposition of timely filed motion for rehearing.

_____

Nos. 3D17-2075, 3D18-963 & 3D18-995
Lower Tribunal Nos. 15-2421, 17-1143, 17-1154,
17-1155, 18-335 & 17-2334

_____

**A.A., a juvenile; S.F., a juvenile & N.A., a juvenile,**
Appellants/Petitioners,

vs.

**The State of Florida,**
Appellee/Respondent.


An Appeal from the Circuit Court for Miami-Dade County, Maria I. Sampedro-Iglesia, Judge. (3D17-2075).

Cases of Original Jurisdiction—Prohibition. (3D18-963 and 3D18-995).

Carlos J. Martinez, Public Defender, and Billie Jan Goldstein and Jonathan Greenberg, Assistant Public Defenders, for appellants/petitioners.

Ashley Moody, Attorney General, and David Llanes and Christina L. Dominguez, Assistant Attorneys General, for appellee/respondent.


Before EMAS, C.J., and FERNANDEZ[1] and SCALES, JJ.

_____

[1] Did not participate in oral argument.

SCALES, J.

In these consolidated cases, two juvenile defendants in delinquency cases, S.F. and N.A., challenge, via petition, "do not run" orders entered against them. The third juvenile defendant, A.A., concedes the do not run order entered against her was authorized, but challenges, via appeal, the contempt adjudication resulting from A.A.'s violation of her do not run order. The challenged orders prohibited each respective juvenile from running away from his or her home or alternate placement while a delinquency proceeding was pending. For the reasons set forth below, we deny S.F. and N.A.'s petitions for writ of prohibition (and their alternate petitions for habeas corpus) and uphold the trial courts' issuance of do not run orders in their cases. We reverse, however, the judgment holding A.A. in contempt of court because of procedural and evidentiary problems occurring at A.A.'s contempt trial.

## I. Procedural and Factual Background

### A. Introduction

In each of these three cases, the trial court issued a do not run order to a juvenile who was pending a court adjudication and whom the trial court was concerned would not appear for hearing. A do not run order is a species of injunction generally requiring the juvenile to remain in the juvenile's home or placement. In each instance, the juvenile violated the do not run order and, as a result, potentially became subject to a contempt of court judgment. Of the three juveniles, only A.A.'s

2

case graduated to a contempt trial. The trial courts consider a do not run order to be a form of nonsecure detention. See § 985.03(18)(b), Fla. Stat. (2017). The defense in each of these cases argues that the trial court does not hold the authority to issue a do not run order to a juvenile pending a finding of delinquency because no provision of chapter 985 of the Florida Statutes specifically provides for such an order.

*B. The case of S.F.*

On February 14, 2018, the State filed a petition for delinquency charging sixteen-year-old S.F. with (i) misdemeanor battery of her mother, and (ii) misdemeanor criminal mischief by damaging the hood of her mother's car (lower tribunal case number J18-335). When the State filed its delinquency petition, S.F. was also the subject of a dependency case pursuant to chapter 39 of the Florida Statutes (lower tribunal case number D18-15129). On February 15, 2018, the trial court conducted a hearing in accordance with section 985.255(1) of the Florida Statutes. At this hearing, the trial court (presiding over both the delinquency and the dependency cases) issued a shelter placement order that released S.F. to the Miami Bridge Shelter ("Bridge").

While the record is not entirely clear, it appears that on May 8, 2018, the trial court entered a "pick up order in both the delinquency case and the dependency case

3

for S.F.'s failure to appear at a scheduled hearing that day."[2] With S.F. in custody, the trial court quashed the pick-up order at S.F.'s May 11, 2018 preliminary hearing. At this hearing, the trial court released S.F. to the custody of the Department of Children and Families ("DCF") to be placed in Miami's Rivers of Life shelter. Bridge, the previous shelter, declined to allow S.F. to remain there after an alleged violent incident. S.F.'s case manager advised the trial court that S.F.'s recent history of not following directions and not attending school had led to her removal from foster family care.

At the May 11, 2018 preliminary hearing, the Clerk advised the trial court that, in the delinquency case, S.F. had an upcoming docket sounding scheduled for May 16, 2018, with trial set for July 9, 2018. At the end of this May 11, 2018 hearing, when the trial court released S.F. to the Rivers of Life shelter, the trial court, over the objection of S.F.'s counsel, verbally entered a do not run order from the shelter.[3]

S.F. then filed the instant petition with this Court challenging the do not run order, seeking prohibition, or, in the alternative, habeas relief. (3D18-963).

---

[2] A pick-up order is an order entered by a trial court to take a juvenile into custody when that juvenile has failed to appear for a scheduled delinquency hearing. See A.K. v. Dobular, 951 So. 2d 989, 991 (Fla. 3d DCA 2007).

[3] Section 985.255 sets forth juvenile detention criteria. S.F. was charged with committing an offense involving domestic violence (section 985.255(1)(d)) and had failed to appear for an adjudicatory hearing (section 985.255(1)(i)). Thus, S.F. was eligible for a form of detention to be determined by the trial court. As explained, *infra*, a do not run order is a form of nonsecure detention.

4

*C. The case of N.A.*

On November 14, 2017, the State filed a petition for delinquency charging N.A., a fourteen-year-old boy, with third degree felony grand theft (later changed to misdemeanor second degree petit theft) for allegedly stealing a wallet and its contents at school (lower tribunal case number J17-2334). N.A. was arrested for this crime on October 4, 2017, but the record is unclear as to whether the Department of Juvenile Justice ("DJJ") took custody of him and placed him in detention care, and whether N.A. received a hearing within twenty-four hours of being taken into custody. See §§ 985.25(1), 985.255(1), Fla. Stat. (2017).

N.A. failed to appear for a November 27, 2017 court hearing in case number J17-2334, and the trial court issued a pick-up order. N.A. was arrested on the pick-up order on January 27, 2018, and also was charged with a new misdemeanor for loitering and prowling (lower tribunal case number J18-209B). The State, however, took no action on this latter charge. After being held in secure detention due to the pick-up order, N.A. was released to his mother and the pick-up order was quashed; however, two days later, for a reason not stated in the record, N.A. was custody-released to Miami's River of Life shelter. On January 28, 2018, as a result of N.A. being arrested in the loitering and prowling case, the DJJ, pursuant to section 985.245 of the Florida Statutes, had prepared a Detention Risk Assessment, finding that N.A. was of minimal risk and eligible for release.

5

N.A. missed another court appearance in case number J17-2334 on March 13, 2018, and another pick-up order was issued. It was quashed on May 15, 2018, when N.A. was again detained. On May 17, 2018, N.A. appeared at a change of custody hearing. The record indicates that a home study had been in progress with the goal of providing N.A. with a new place to live. At this hearing, the trial court informed N.A. that he was being released to a Ms. Gonzalez, the mother of N.A.'s school friend. The Gonzalez family had volunteered to take N.A. into their home. At this hearing, the trial court, over the objection of N.A.'s counsel, issued a written do not run order. The order provided that, if N.A. were to run from his placement in Ms. Gonzalez's home, N.A. "shall serve five (5) days in secure detention for each day [he] is on runaway status." The record of this hearing reflects that N.A. was scheduled for a June 5, 2018 trial in his delinquency case. The trial court also advised N.A. he could be held in contempt of court if he were to violate the terms of the do not run order.

N.A. then filed the instant petition with this Court challenging the do not run order, seeking prohibition, or, in the alternative, habeas relief. (3D18-995).

*D. The case of A.A.*

1. A.A.'s chronic misbehavior

On August 27, 2015, the State filed a petition for delinquency charging A.A., then a fourteen-year-old girl, with first degree misdemeanor battery of her mother

6

(lower tribunal case number J15-2421).[4] She was released to her mother's custody. At A.A's June 2016 trial, the trial court sentenced A.A. to a diversionary program for domestic violence with substance abuse treatment, a program from which she was expelled a month later. A.A. failed to satisfactorily compete the diversionary program and, on September 8, 2016, the trial court withheld adjudication in A.A.'s delinquency case and gave A.A. probation through her nineteenth birthday. Pursuant to the probation order, A.A. would remain under DJJ supervision, would live at home with a parent or guardian, would complete twenty hours of community service, would be subject to a curfew, would attend school every day, and would not possess alcoholic beverages, controlled substances or tobacco products.

The record reflects that, despite the conditions of A.A's probation, A.A. had a history of going missing and becoming the subject of pick-up orders. On December 21, 2016, A.A.'s probation officer filed an affidavit alleging that A.A. violated her probation repeatedly from September to December of 2016, by not being home, by not attending school, by being suspended from school, and by testing positive for marijuana use. Then, in January of 2017, A.A. was charged with another battery (lower tribunal case number J17-73). On January 30, 2017, the trial court, in case numbers J15-2421 and J17-73, issued a concise, written do not run order. This order

---

[4] A.A. is also the subject of a dependency case that dates back to the year of her birth, lower tribunal case number D01-16062.

required A.A. to "remain living at [A.A.'s] home and/or current placement" and, if A.A. should run, then she "shall serve five (5) days in secure detention for each day [A.A.] is on runaway status."

On March 14, 2017, A.A. was scheduled for a hearing for violating the terms of the probation order entered in case number J15-2421 and for a trial in the second battery case (J17-73). The trial court reset both of these proceedings for April 19, 2017. In the meantime, on March 14, 2017, the trial court issued a second do not run order, in case numbers J15-2421 and J17-73. This particular, written do not run order made explicit that a violation of the order could "result in a civil contempt hearing."[5] At the April 19, 2017 hearings on both delinquency cases, the trial court dismissed the violation of probation allegation in J15-2421 and acquitted A.A. of the second battery charge (J17-73).

A.A. remained on probation in J15-2421. From May to November of 2017, the trial court issued and subsequently quashed six more pickup orders. The trial court ordered A.A. to write a letter of apology for lying about her case manager, then set a contempt hearing (which was subsequently rescheduled to July 18, 2017) when A.A. did not complete the letter. A.A. was not in court at the start of the July 18,

---

[5] This do not run order, like a subsequent rule to show cause, dated May 8, 2017, refers to "civil contempt." Contempt proceedings in juvenile court are governed by section 985.037 of the Florida Statutes. This statute contains clear indicia of criminal, rather than civil, contempt procedures and protections.

2017 contempt hearing because she was in custody for a new delinquency charge (resisting arrest without violence, lower tribunal case number J17-1657, which the record reflects was "no-actioned"). The order to show cause for this July 18, 2017 contempt hearing eventually was discharged.

To add to all of this turmoil, A.A. picked up three new cases from Palm Beach County in March of 2017, which were transferred to Miami-Dade County in May of 2017.[6] The trial court accepted jurisdiction of these cases on May 13, 2017. Again, A.A.'s probation officer filed an affidavit of probation violation – alleging school attendance and curfew violations – throughout May and June of 2017. This affidavit was filed in A.A.'s original battery case – J15-2421 – as well as in all three of the cases transferred from Palm Beach County.

While A.A. was subject to the March 14, 2017 do not run order, she ran away and allegedly was missing on May 8, 9, 16, 17, 18 and June 12 and 13, 2017. These alleged violations were the subject of a July 18, 2017 State petition for a rule to show cause, seeking to hold A.A. in contempt for violation of the March 14, 2017 do not run order. A contempt of court trial was set for August 22, 2017.[7] A.A. absconded

_____

[6] The lower tribunal case numbers for these cases are: J17-1143 (trespass), J17-1154 (burglary of an unoccupied dwelling, petit theft), and J17-1155 (burglary of an unoccupied dwelling, petit theft, battery).

[7] The proceedings and the order of the trial court from this August 22, 2017 contempt trial concerned the dates of May, 8, 9, 16, 17, 18 only.

from DJJ on July 25, 2017; as a result, the State placed A.A. into secure detention on July 30, 2017, where she remained until August 15, 2017, when she was released into DCF custody. She absconded again and was placed into secure detention again until the start of her August 22, 2017 contempt trial.

2. A.A.'s contempt trial

The State called two witnesses: A.A.'s case manager and A.A.'s former foster mother. The case manager testified that A.A. disappeared from her office during the morning of May 8, 2017, and that the police located A.A. on May 9th. The case manager further testified, after a hearsay objection was overruled, that she received notice – presumably from one of A.A.'s foster parents – that A.A. did not return home from an outing to the movies on May 15th. The case manager's notes reflected that A.A. did not return to her foster home until May 18th.

Over A.A.'s objection, A.A.'s former foster mother – A.A.'s foster parent during the May 15-18 absences – testified by telephone. The defense objected to the foster mother's testimony by telephone. The foster mother generally confirmed that A.A. had run away from home and that she had communicated this information to the case manager; however, the foster mother could not identify specific dates because her cellphone, where she had recorded the dates, was damaged and inaccessible.

The trial court found that A.A. had violated the terms of the March 14, 2017 do not run order and, on August 27, 2017, adjudicated A.A. guilty of contempt of court. It sentenced A.A. to sixty-five days of secure detention: five days for the first offense and fifteen days for each of the four additional offenses.

A.A. timely appealed this August 27, 2017 order (3D17-2075). Initially, A.A. argued both that the trial court lacked jurisdiction to enter the March 2017 do not run order, and that A.A. was denied due process as a result of how the trial court conducted the contempt hearing. In her reply brief, A.A. concedes that, because A.A. was on probation, the do not run order was authorized. A.A. continues to maintain that she was denied due process.

**II. Analysis**

We consolidated the petitions of S.F. and N.A. with the appeal filed by A.A. For the reasons we discuss below, we deny the petitions of S.F. and N.A., but we reverse and remand A.A.'s contempt adjudication.

*A. The cases of S.F. and N.A.*

1. Overview of chapter 985

 S.F. and N.A. both argue that the do not run orders entered against them are void because the trial court lacked the statutory authority to enter them. While we agree with S.F. and N.A.'s general premise that pretrial detention of juveniles is

11

governed by statute,[8] we disagree that the relevant provisions of chapter 985 do not provide sufficient statutory authority for the do not run orders entered against S.F. and N.A.

For an effective understanding of our holding, we provide a brief overview of the relevant statutes relating to pretrial detention of juveniles. Generally, upon a child's arrest, DJJ receives the child either from a law enforcement agency or from the court, and DJJ conducts a risk assessment to determine whether, pending adjudication, the child should be subject to "detention care." See §§ 985.03(18), 985.25, 985.245, Fla. Stat (2017). There are two species of detention care: "secure detention," where the child is under physical restriction in a secure detention facility; and "nonsecure detention," where the child is released to the custody of a parent, guardian, or custodian in a physically non-restrictive environment. See § 985.03(18)(a)-(b), Fla. Stat. (2017).

Forms of nonsecure detention include, but are not limited to, home detention, electronic monitoring, day reporting centers, evening reporting centers, and nonsecure shelters. § 985.03(18)(b), Fla. Stat. (2017). Importantly, in 2014, the Florida Legislature amended the definition of "nonsecure detention" to expressly provide that "(n)onsecure detention may include other requirements imposed by the court." Ch. 2014-163, § 3, Laws of Fla. Hence, if a child is otherwise validly ordered

---

[8] See C.A.F. v. State, 976 So. 2d 629, 631 (Fla. 5th DCA 2008).

into "nonsecure detention," then do not run orders, such as the ones entered against S.F. and N.A., are expressly authorized by statute as "other requirements imposed by the court."[9]

Assuming DJJ's initial risk assessment establishes grounds for "detention care" for the juvenile, a detention hearing must follow within twenty-four hours of the child being placed in custody in order to determine whether continued detention is warranted. § 985.255(1), Fla. Stat. (2017). At this hearing, the trial court must consider DJJ's risk assessment and, subject to the statute's requisites, determine whether continued detention is appropriate. § 985.255(3). We find that three specific provisions of section 985.255 were relevant in the course of S.F. and N.A.'s cases. First, section 985.255(1)(g)[10] authorizes continued detention care if the juvenile is

---

[9] We note that S.F. and N.A. rely heavily on the pre-amendment case of C.A.F. v. State, 976 So. 2d 629 (Fla. 5th DCA 2008). In C.A.F., the trial court released the arrested juvenile to his parents' custody, and later, after arraignment, entered a release order that significantly restricted C.A.F.'s freedom. Id. at 630-31. In adjudicating C.A.F.'s habeas corpus challenge of the release order, our sister court held that, under the then existing statutory scheme, no authority existed for the entry of such an order. Id. at 631.

[10] This provision reads in its entirety as follows:

> (1) Subject to s. 985.25(1), a child taken into custody and placed into detention care shall be given a hearing within 24 hours after being taken into custody. At the hearing, the court may order continued detention if:
>
> . . . .

13

charged with a second or third degree felony and is awaiting final disposition of his or her case. Second, section 985.255(1)(i) authorizes continued detention care if the juvenile has been detained on a pick-up order after willfully failing to appear.[11] Finally, although not applied below with respect to S.F., sections 985.255(1)(d) and

---

(g) The child is charged with any second degree or third degree felony involving a violation of chapter 893 or any third degree felony that is not also a crime of violence, and the child:
1. Has a record of failure to appear at court hearings after being properly notified in accordance with the Rules of Juvenile Procedure;
2. Has a record of law violations prior to court hearings;
3. Has already been detained or has been released and is awaiting final disposition of the case;
4. Has a record of violent conduct resulting in physical injury to others; or
5. Is found to have been in possession of a firearm.

§ 985.255(1)(g), Fla. Stat. (2017).

[11] In relevant part, section 985.255(1)(i) provides as follows:

(1) Subject to s. 985.25(1), a child taken into custody and placed into detention care shall be given a hearing within 24 hours after being taken into custody. At the hearing, the court may order continued detention if:

. . . .

(i) The child is detained on a judicial order for failure to appear and has previously willfully failed to appear, after proper notice:
1. For an adjudicatory hearing on the same case regardless of the results of the risk assessment instrument; or
2. At two or more court hearings of any nature on the same case regardless of the results of the risk assessment instrument.

§ 985.255(1)(i), Fla. Stat. (2017).

14

(2) authorize continued detention care if the juvenile is charged with an act of domestic violence.

2. Authority for the Do Not Run Orders

Both S.F. and N.A. argue that, under this statutory scheme, detention care may be imposed *only* when the child initially is taken into custody, and therefore, the trial court lacked specific statutory authority to enter subsequent do not run orders as to them. We disagree. Section 985.255(1)(i) specifically authorizes the juvenile court to order "continued detention" if the child is detained on a judicial order for failure to appear and has previously failed to appear. In essence, the detention process re-commences as the product of an executed pick-up order.

Both S.F. and N.A. were taken into custody and detained on pick-up orders for failure to appear at a court proceeding. Consequently, the trial court was authorized to order "continued detention" of S.F. and N.A. under section 985.255(1)(i). As noted above, the definition of nonsecure detention in section 985.03(18)(b) expressly authorizes the trial court, at its option, to "include other requirements" as part of nonsecure detention. The trial court exercised its discretion in each of S.F. and N.A.'s cases to custody-release the juvenile (S.F. was released to a shelter, N.A. to a friend's home), and then exercised its further discretion to maintain an aspect of nonsecure detention by imposing the subject do not run orders. Once S.F. and N.A. were in detention, the trial court had the authority to impose

15

continued detention under section 985.255(1) and the do not run orders under the "other requirements" language of section 985.03(18)(b).

We, therefore, conclude that the trial court had specific statutory authorization to enter the do not run orders in these cases. Because we find authority for do not run orders in S.F. and N.A.'s cases, we deny S.F. and N.A.'s petitions.

*B. The case of A.A.*

A.A. appeals the order of contempt, which the trial court entered against A.A. after finding that she violated its March 14, 2017 do not run order. Unlike the cases of N.A. and S.F., *supra*, A.A. does not challenge the authority of the trial court to enter the subject do not run order,[12] but does challenge the resulting contempt order on due process grounds. On this record, we agree that the trial court found A.A. in contempt without affording A.A. sufficient due process.

Specifically, at A.A.'s contempt trial, the trial court allowed improper testimony in two instances. First, A.A.'s former foster mother was allowed to present testimony over a speakerphone, depriving A.A. the right to confront a witness in a criminal contempt proceeding. Pursuant to section 985.037(4)(b)(4), when a child is

---

[12] As previously mentioned, in her reply brief A.A. conceded that the trial court had the authority to issue her a do not run order under section 985.02(4)(a) of the Florida Statutes, because the trial court already had the discretion to subject A.A. to detention care pursuant to A.A.'s September 2016 probation. But for her probation, A.A., like S.F. and N.A., maintains that the trial court would not have the authority to issue a do not run order under chapter 985.

16

charged with contempt of court for violating a court order, the child has a right to confront witnesses at the hearing. See Fla. R. Juv. P. 8.150(5)(C). A.A.'s former foster mother, a witness adverse to A.A., gave testimony by telephone that proved to be uncertain. A.A. had a right to confront her. See Harrell v. State, 689 So. 2d 400, 403 (Fla. 3d DCA 1997).

Second, A.A.'s case manager gave testimony that amounted to inadmissible hearsay when she provided information about A.A's status as a runaway on specific dates without having personal knowledge of A.A.'s whereabouts on those dates. Impermissible hearsay may not support a finding of contempt of court. Torres v. State, 870 So. 2d 149, 149 (Fla. 2d DCA 2004).

On remand, we remind the trial court of the requirement that, while a juvenile may be placed in a secure detention facility as a sanction for contempt of court, the trial court is required to consider alternate sanctions. § 985.037(3), Fla. Stat. (2017). The record in this case indicates that the trial court ordered A.A. to secure detention without considering alternate sanctions. Hence, we reverse the contempt order in A.A. and remand for a hearing to be conducted consistent with the requisites of section 985.037.

**III. Conclusion**

When a juvenile is taken into custody for violation of a pick-up order, the delinquency court is authorized to hold the juvenile in continued detention. Even if

17

the trial court exercises its discretion to custody-release the juvenile, the trial court may impose, pursuant to section 985.03(18)(b), "other requirements" such as a do not run order. Thus, the trial court had the specific statutory authority to enter the do not run orders as to N.A. and S.F.

When conducting a contempt hearing on a violation of a do not run order, the trial court must afford the juvenile due process and abide by the provisions of section 985.037. A.A.'s hearing did not conform to these requirements, and therefore, we reverse the subject contempt order entered against A.A. and remand to the trial court to conduct a hearing consistent with constitutional and statutory requisites.

Petitions of S.F. and N.A. denied; order adjudicating A.A. in contempt of court reversed and remanded.