# Third District Court of Appeal
## State of Florida

Opinion filed June 16, 2021.
Not final until disposition of timely filed motion for rehearing.

_____

No. 3D21-675
Lower Tribunal Nos. J20-657A & J20-658A

_____

**R.L.G., a juvenile,**
Appellant,

vs.

**The State of Florida,**
Appellee.

An Appeal from the Circuit Court for Miami-Dade County, Yery Marrero, Judge.

Carlos J. Martinez, Public Defender, and James Odell, Assistant Public Defender, for appellant.

Ashley Moody, Attorney General, and Richard L. Polin, Assistant Attorney General, for appellee.

Before LOGUE, LINDSEY, and HENDON, JJ.

LOGUE, J.

This case concerns the evidentiary threshold a party must meet to admit GPS information generated by a third party.

A juvenile, R.L.G., appeals a finding of indirect criminal contempt for leaving home in violation of a supervised release order. The evidence against the juvenile consisted of his probation officer testifying to location information provided by BI Incorporated, the third-party monitoring company that supplied and monitored an ankle bracelet worn by the juvenile. The juvenile asserts the officer's testimony based on BI's information was inadmissible hearsay. Given the limited record before us and the precedent of this Court and the other district courts, we agree with the juvenile.

In so doing, we acknowledge the State makes an interesting argument. Hearsay, the State maintains, encompasses only the out-of-court "statements of persons." BI's information, the State argues, is not hearsay but is instead an out-of-court "statement by a machine." BI's information, so the State's argument goes, qualifies as a "statement by a machine" because it was "automatically generated without manual input from any person." As the juvenile accurately notes, however, the factual claim underpinning the State's argument is "essentially a raw guess by the State because the record contains no information to what extent the information given to [the probation officer] by BI was automatically generated."

2

In this and other ways, the cursory record before us is woefully lacking the necessary factual support for this Court to consider the State's argument. We are not suggesting that the State does not possess evidence that might support its claim: we are only observing such evidence was never made part of this record. Consideration of whether and when out-of-court "statements by machines" are not hearsay must await a case with a record supporting that argument.

**FACTS**

The juvenile was placed on home detention with an ankle monitor. Ultimately, he was issued an order to show cause for indirect criminal contempt pursuant to Florida Rule of Juvenile Procedure 8.150(b). In pertinent part, the order was based on his probation officer's affidavits stating the juvenile had left home without permission on certain dates and times.[1]

As authorized by Rule 8.150(c)(5), the trial court undertook the double burden of acting as both prosecutor and judge. An assistant state attorney

---

[1] The affidavits also included a violation alleging the juvenile tampered with his ankle monitor. The trial court, however, expressly declined to base its finding of contempt on those allegations. In addition, the affidavits also alleged the juvenile violated the conditions of his supervised release on March 3, 2021. At the hearing, this violation was established by the testimony of the probation officer that he visited the home and confirmed the juvenile was absent. Based on R.L.G.'s concession and our own review of the record, we affirm this finding of violation.

3

was present but spoke only once to indicate she had no questions. On examination by the trial judge and without any prior evidentiary foundation, the probation officer began testifying that the juvenile had left home on certain dates and times. The juvenile's attorney raised a hearsay objection, which the trial court overruled. The trial court granted the juvenile a standing objection to hearsay.

During direct examination by the trial court, the officer made two comments that bear on the evidentiary foundation of his testimony. The trial court asked him twice for the source of his knowledge that the juvenile had left home. The first time, the probation officer answered, "[i]t's coming from the information that's provided from his device that's equipped around his ankle." The second time, the probation officer answered it is "due to the monitoring system that tracks him by the points that's provided by his device."

Only on cross-examination after the officer's testimony was admitted did the probation officer reveal the monitoring was conducted by a third-party which he identified simply as "BI," an apparent reference to BI Incorporated. In the sole mention of GPS at the hearing, he testified that BI's system uses either "Wi-Fi or GPS." Asked how he received BI's information, the officer's answer was far from clear:

4

QUESTION:    So you merely see that someone is not home by looking at some screen that pops up; correct?

ANSWER:    That and we get an alert that's sent out also.

QUESTION:    **So an alert is sent out.** Is it coming through a computer screen to you, a phone, or **how does that come to you?**

ANSWER:    **Through emails. It's documented in the system. It shows the alerts, it's the same time as the alerts. It shows the whereabouts when he's not home.**

(emphasis added). The officer's testimony was inconclusive and indeterminate in several ways. It is unclear from his testimony if his reference to "the system" meant BI's system or the State's system. It is also unclear if he meant the system uses "GPS" or whether he meant the system uses "WiFi." It is also unclear if the officer meant BI sent its location information by only email alerts or by both emails and separate electronic alerts in some manner not further identified. In whatever form they took, BI's electronic messages to the officer were not offered into evidence. Nor was the documentation in the "system" to which he referred. No representative or records custodian from BI testified.

Two points, however, are clear. First, the location information came from BI, a third party. Second, the probation officer was never asked and never said that BI's location information or messages were "automatically

5

generated without manual input from any person." No witness testified on this point, one way or the other. No documentary evidence was admitted on this point. The trial judge made no finding in this regard. In fact, there was simply no discussion at trial of this fact that the State asserts for the first time only on appeal.

The trial court found the juvenile had willfully disobeyed the conditions of his supervised release based on the probation officer's testimony and affidavits, held the juvenile in indirect criminal contempt of court, and sentenced him to fifteen days in secure detention. This appeal followed.

**ANALYSIS**

Because indirect criminal contempt is a crime, proof of criminal contempt must be established beyond a reasonable doubt. Parisi v. Broward Cnty., 769 So. 2d 359, 364 (Fla. 2000); Vernell v. State ex rel. Gerstein, 212 So. 2d. 11, 13 (Fla. 3d DCA 1968) ("[I]n a proceeding for indirect criminal contempt the contemnor is presumed to be innocent until proved guilty beyond a reasonable doubt."). Moreover, "[i]mpermissible hearsay may not support a finding of contempt of court." A.A. v. State, 271 So. 3d 87, 95 (Fla. 3d DCA 2019).

We are reviewing a trial court's decision to admit evidence over a hearsay objection. While it is often said that a trial court's decision whether

6

to admit evidence is reviewed for an abuse of discretion, this is true only when the decision actually involves an exercise of discretion; a trial court's decision whether to admit evidence based upon a purely legal ruling is reviewed de novo. See, e.g., Dayes v. Werner Enters., Inc., 314 So. 3d 718, 722 (Fla. 3d DCA 2021) (holding a trial court's interpretation of the evidence code and applicable case law when deciding whether evidence was hearsay is subject to de novo review). As our Supreme Court has recently reiterated, "the question of whether a statement is hearsay is a matter of law and is subject to de novo review on appeal." Jackson v. Household Fin. Corp. III, 298 So. 3d 531, 535 (Fla. 2020). Following this binding precedent, we review the trial court's decision to overrule the juvenile's hearsay objection de novo.

The GPS records of third parties have traditionally been treated as hearsay and thus ordinarily admissible only under the business records exception to the hearsay rule, a point of law recently affirmed by our sister district courts. See Laing v. State, 200 So. 3d 166, 167–68 (Fla. 5th DCA 2016) (reversing a revocation of probation based on third-party GPS data because such "GPS data . . . is definitive hearsay" and "[n]o effort was made to utilize any exception to the hearsay rule."); Channell v. State, 200 So. 3d 247, 249 (Fla. 1st DCA 2016) (reversing a revocation of probation because the third-party GPS data on which it was based was "clearly hearsay" and

the State failed to establish the data came within the business records exception); Edwards v. State, 60 So. 3d 529, 530–31 (Fla. 2d DCA 2011) (holding third-party GPS data was "clearly hearsay," and reversing a revocation of probation based on such evidence when the State failed to establish it came within the business records exception).

This traditional approach has been recognized by this Court. In Perez v. State, 980 So. 2d 1126, 1131 (Fla. 3d DCA 2008), for example, we upheld the admission of cell phone companies' records indicating the times of the calls, the duration, and the identity and location of the tower receiving and transmitting the calls under the business records exception to hearsay. See also City of Miami v. Kho, 290 So. 3d 942, 945 (Fla. 3d DCA 2019) (reversing a trial court for admitting a photograph from Google Maps in part because the proponent of its admissibility "did not present any evidence as to the operating capabilities or condition of the equipment used by Google Maps. There also was no testimony as to the procedures employed by Google Maps in taking the photograph").[2]

---

[2] See, e.g., United States v. Brooks, 715 F.3d 1069, 1079 (8th Cir. 2013) (holding GPS records were properly admitted under the business records exception where executive of security company testified that "company routinely keeps the GPS data on the company server"); United States v. Wood, No. 08-CR-92A, 2009 WL 2157128, at *4 (W.D.N.Y. 2009) (holding that GPS records were properly admitted as business records after

The State did not argue below, or now on appeal, that the evidentiary foundation necessary to admit BI's information under the business record exception was established. Because the State does not address these points in its brief, we consider these issues conceded.

On appeal, however, the State introduces an argument that it did not make below. Hearsay, the State maintains, only applies to out-of-court "statements by persons." While BI's location information and messages may constitute out-of-court statements, the State argues, they were "statements by machines." BI's location information and messages, the State's argument continues, were "statements by machines" because they were "automatically generated without manual input from any person."

The legal basis for the State's theory is the growing trend in the law to recognize that evidence of information from new technologies like GPS location, DNA matches, facial recognition, and chromatography (used to detect chemicals in samples) is often generated without human input. As noted by several commentors, in the brave new world of artificial intelligence, the finger of accusation is often pointed, not by a human being, but by an

---

custodian of the GPS records testified that "he obtained custody of those records and relied upon them in the ordinary course of his business").

9

algorithm.[3] Moreover, it has already occurred that one out-of-court "statement by a machine" conflicted with a dueling out-of-court "statement" by a different machine.[4]

These circumstances have given rise to a movement to remove such out-of-court "statements by machines" from the ambit of the hearsay rule, so long as the statements were automatically generated without manual input from any person. When automatically generated, these "statements by machines" are reviewed for admissibility under a different, not-yet-fully-defined foundational standard akin to that used to admit expert testimony. This trend is based on the insight that the central concept informing the hearsay rule, to ensure testimony is subject to the test of cross-examination, has little or no application to statements by machines: the algorithm or machine cannot be "cross-examined" in any traditional sense.[5]

---

[3] See, e.g., Brian Sites, Machines Ascendant: Robots and the Rules of Evidence, 3 Geo. L. Tech. Rev. 1, 5 (2018).

[4] See generally Andrea Roth, Machine Testimony, 126 Yale L.J. 1972, 1976 (2017) ("The shift from human- to machine-generated proof has, on the whole, enhanced accuracy and objectivity in fact finding. But as machines extend their reach and expertise, to the point where competing expert systems have reached different 'opinions' related to the same scientific evidence, a new sense of urgency surrounds basic questions about what machine conveyances are and what problems they pose for the law of evidence." (footnotes omitted)).

[5] See Sites, supra note 3, at 18.

While this issue is interesting, we cannot resolve it based on the record before us. As the juvenile points out, the State's entire legal argument is premised on its claim that BI's out-of-court location information and messages were "automatically generated." Whether or not BI's information and messages involved human input is clearly a factual issue. The juvenile maintains that this factual claim by the State is not supported by the record.

Focusing on this initial issue, the juvenile argues that the State's claim in this regard is "essentially a raw guess by the State because the record contains no information to what extent the information given to [the probation officer] by BI was automatically generated or required human input or interpretation." Having carefully reviewed the record, we are compelled to agree with the juvenile. Regarding the factual claim underpinning the State's argument, the record is inconclusive and indeterminate, at best. We do not fault the trial court for this absence of evidence to support the State's argument because, as we said, the State never raised this argument below.

Because its argument was never made to the trial court, the State must rely on the "tipsy coachman" doctrine, under which a trial court will be upheld (but not reversed) based upon new arguments made for the first time on appeal. Ruiz v. Policlinica Metropolitana, C.A., 260 So. 3d 1081, 1090–91 (Fla. 3d DCA 2018). This Court has already held, however, that the tipsy

11

coachman doctrine does not apply in a case like this one where the record on appeal does not contain the facts needed to support the new argument. Id.; see also Fitzsimmons v. State, 935 So. 2d 125, 128 (Fla. 2d DCA 2006) (refusing to rely on the "tipsy coachman" doctrine to affirm trial court's admission of evidence based on the State's fact-intensive argument not considered or ruled upon by trial court).

In the absence of any record evidence as to whether BI's information and messages involved human input, the trial court's failure to follow binding precedent regarding admission of third-party GPS data was reversible error.[6] For these reasons, we conclude the State has not met its burden as the proponent of the admissibility of BI's location information. Accordingly, we reverse the contempt findings that were based solely on the probation officer's testimony of BI's information and messages because, in this record, such testimony comprised inadmissible hearsay.

Affirmed in part; reversed in part.

HENDON, J., concurs.

---

[6] See, e.g., HSBC Bank USA, Nat'l Ass'n v. Buset, 241 So. 3d 882, 887 (Fla. 3d DCA 2018) (noting the trial court erred by failing to follow controlling precedent, even when a party introduces a new argument challenging the precedent).

LINDSEY, J., concurring in part and dissenting in part.

I respectfully dissent and would affirm the trial court's order finding R.L.G. in indirect criminal contempt of court because there is competent substantial evidence in the record to support the trial court's finding.

The parties agree that resolution of this appeal hinges on whether GPS alerts are inadmissible hearsay.[7]  Indeed, this is the only issue on appeal. Yet, the majority asserts that "[c]onsideration of whether and when out-of-court 'statements by machines' are not hearsay must await a case with a record supporting that argument." Maj. Op. at 3.  Instead, the majority frames the issue on appeal as having to do with "the evidentiary threshold a party must meet to admit GPS information generated by a third party."  Id. at 2. But in reversing the trial court, the majority ultimately concludes that

_____

[7] See Initial Br. 2 ("Mr. Grant testified that he received 'information' from the GPS 'device that's equipped around R.G.'s ankle' that he left his home without approval on multiple occasions.  The defense objected and asked for a 'standing objection' that the information provided by the monitor was 'hearsay.'"); Initial Br. 5 ("Because the evidence of the GPS alerts was inadmissible hearsay, the evidence at the hearing below was sufficient to sustain only a single contempt finding."); Answer Br. 7 ("The testimony regarding alerts that the probation officer received on his monitor was not hearsay."); Reply Br. 4 ("Turning to the only issue raised by this appeal, whether the GPS alerts were inadmissible hearsay, the State argues that the 'Florida cases on this subject are sparse.'").

13

> the State has not met its burden as the proponent of the admissibility of BI's location information. Accordingly, we reverse the contempt findings that were based solely on the probation officer's testimony of BI's information and messages because, in this record, such testimony comprised inadmissible hearsay.

Id. at 12-13. I respectfully disagree with the premise upon which the majority necessarily relies for this conclusion: that the alerts generated by the ankle monitor are hearsay.

The issues and arguments framed by the majority are not the issues and arguments framed by R.L.G.—the appellant. This appeal is not about the evidentiary threshold a party must meet to admit GPS information generated by a third party. It is not about the probation officer's testimony of BI's information and messages. It is not about the sufficiency of the record. It is about whether GPS alerts are hearsay.

Because GPS alerts are not hearsay, there is no reason to expand our review of the record to whether a sufficient foundation was laid to admit them under the business records exception to the hearsay rule or any other exception.[8] This is so because unless evidence constitutes hearsay, exceptions to the rule against hearsay are inapplicable.

---

[8] The business records exception provides for the admissibility of the following:

14

Further, because R.L.G. is the appellant, it is his burden to show error. See Applegate v. Barnett Bank of Tallahassee, 377 So. 2d 1150, 1152 (Fla. 1979) ("In appellate proceedings the decision of a trial court has the presumption of correctness and the burden is on the appellant to demonstrate error."). It is not this Court's job to find it for him. See Bainter v. League of Women Voters of Fla., 150 So. 3d 1115, 1126 (Fla. 2014) ("'Basic principles of due process'—to say nothing of professionalism and a long appellate tradition—'suggest that courts . . . ought not consider arguments outside the scope of the briefing process.'" (quoting Powell v.

---

A memorandum, report, record, or data compilation, in any form, of acts, events, conditions, opinion, or diagnosis, made at or near the time by, or from information transmitted by, a person with knowledge, if kept in the course of a regularly conducted business activity and if it was the regular practice of that business activity to make such memorandum, report, record, or data compilation, all as shown by the testimony of the custodian or other qualified witness, or as shown by a certification or declaration that complies with paragraph (c) and s. 90.902(11), unless the sources of information or other circumstances show lack of trustworthiness. The term "business" as used in this paragraph includes a business, institution, association, profession, occupation, and calling of every kind, whether or not conducted for profit.

§ 90.803(6)(a), Fla. Stat. (2020).

<u>State</u>, 120 So. 3d 577, 591 (Fla. 1st DCA 2013))). R.L.G. has failed to meet this burden.

## I.     BACKGROUND

On January 22, 2021, the trial court issued an order directing R.L.G. not to tamper with or remove the GPS ankle bracelet he had been ordered to wear. Based on affidavits filed by R.L.G.'s probation officer, Mr. Grant, alleging violations of supervised release, the trial court ordered R.L.G. to show cause why he should not be held in indirect criminal contempt. Following an evidentiary hearing, the trial court entered an order of contempt. "Generally, '[a] judgment of contempt comes to the appellate court clothed with a presumption of correctness and will not be overturned unless a clear showing is made that the trial court either abused its discretion or departed so substantially from the essential requirements of law as to have committed fundamental error.'" <u>Cancino v. Cancino</u>, 273 So. 3d 122, 126 (Fla. 3d DCA 2019) (quoting <u>DeMello v. Buckman</u>, 914 So. 2d 1090, 1093 (Fla. 4th DCA 2005)).[9] The issue before us is whether there was competent substantial

---

[9] R.L.G. argues that because there was only one instance where Mr. Grant personally verified the GPS alert by physically going to R.L.G.'s home, there is only competent substantial evidence to support a single violation of the lower court's order directing R.L.G. not to tamper with or remove his electronic monitor and not to leave his home. R.L.G. commendably concedes that there is competent substantial evidence to support one

16

evidence to support the trial court's finding of indirect criminal contempt.  See Pace v. Pace, 295 So. 3d 898, 900 (Fla. 5th DCA 2020) ("A trial court's determination that a party is in willful contempt of court must be based upon competent substantial evidence and is subject to an abuse of discretion standard of review.").  The record before demonstrates that there was.

At the evidentiary hearing below, the judge asked Mr. Grant "to go through the times that the youth was not home."  Counsel for R.L.G. raised a hearsay objection on the basis that he did not know where the information was coming from:

> [Counsel for R.L.G.]: **I need to object to hearsay.** Is this --did he -- was he at -- this is hearsay. I don't know where this testimony is coming from. And this is a personal -- and I know this is a speaking objection. I apologize, but we're not in front of a jury. **But my objection is hearsay as to where this information is coming from.**
>
> [Judge]: Okay. Mr. Grant, where is this information coming from?
>
> [Mr. Grant]: **It's coming from the information that's provided from the device that's equipped around his ankle.**
>
> [Judge]: Okay.
>
> [Counsel for R.L.G.]: That's hearsay, Judge.

---

instance of R.L.G. violating the court's prior order, and I concur with the majority as to that violation.

17

(Emphasis added).

Mr. Grant then proceeded to provide the exact times R.L.G. left home. Counsel for R.L.G. once again objected to hearsay, without further elaboration, and requested a standing objection. The trial court judge acknowledged the standing objection, overruled it, and again asked Mr. Grant how he knew what time R.L.G. left home:

> [Counsel for R.L.G.]: Objection again to hearsay. I should get – I'm going to have a standing objection to the prior testimony as hearsay.
>
> [Judge]: Okay. The defense has a standing objection. I'll overrule it.
>
> . . . .
>
> [Judge]: Okay. And I know that the Defense will ask you, but – questions. And there is a – an objection pending. But can you tell me how you know that?
>
> [Mr. Grant]: **Due to the monitoring system that track[s] him by points that's provided on his device[.]**

(Emphasis added).

Counsel for R.L.G. cross-examined Mr. Grant and asked several detailed questions about the alerts generated by the GPS device and the monitoring system. Mr. Grant explained that he receives an alert on his screen and, in addition, an email alert is sent at the same time with the juvenile's location:

18

Q      But it is the actual system that you're relying on to get those alerts; Correct?

A      That's correct.

Q      So you'd look at something on your screen or – or on a monitor and gives you an alert; correct?

A      Correct

Q      Okay. You're not – as far as the inter – inner workings of that system and how it was made, you're not the person that did that; correct?

A.      That's correct

Q      Okay. So you merely see that someone is not home by looking at some screen that pops up; correct?

A      **That, *and* we – an alert that's sent out also.**

Q      Okay. So an alert is sent out to us. Is it coming through a computer screen to you, a phone, or how does it come to you?

A      **Come through emails. It's documented in the system. It shows the alerts, *it's at the same time as the alerts.* It shows the whereabouts when he's not home.**

Q      And it's -- and it's just based on some other system sending you these alerts; right?

A      That's correct.

(Emphasis added).

Mr. Grant also explained that although he was not the one who personally created the monitoring system, he received some training as to its inner workings:

> Q And really, you don't know how the inner workings operate, other than an alert coming to you in some form.
>
> A I know a little bit more than that.
>
> Q Tell me.
>
> A How the satellites are used to communicate with the device, and the device is also programmed to send out points randomly to the device, and how – the system used to pinpoint the locations, the defections, the speed of the youth.
>
> Q And those are all coming from an outside system from – from you, like a – satellites coming from somewhere else and [pinging] to your system; right?
>
> A That's correct.

In short, R.L.G.'s hearsay objection below was based on not knowing where the information was coming from. Mr. Grant consistently explained, both when asked directly by the judge and on cross-examination, that the GPS alerts he received were generated by the device around R.L.G.'s ankle

20

and the device's monitoring system.[10]  R.L.G. maintains this is hearsay.  For the reasons set forth below, I disagree.

## II.  ANALYSIS

The rule against hearsay can be traced back to at least the 17th century.  Kenneth S. Broun et al., 2 McCormick On Evidence § 244 (8th ed. 2020).  As early as 1668, hearsay was excluded due to lack of any opportunity to cross-examine the absent declarant, and this remains the main justification for the exclusion of hearsay today.  Id. at § 245.  Because "the benefits of cross-examination animate hearsay theory, . . . certain situations where cross-examination is impossible or ineffectual may be categorized as nonhearsay.  As long understood with animal responses and more recently with some machine-generated data, particularly automatically

---

[10] I do not dispute that the proponent of *hearsay* evidence has "the burden of supplying a proper predicate to admit this evidence under an exception to the rule against hearsay."  See Yisrael v. State, 993 So. 2d 952, 956 (Fla. 2008), as revised on denial of reh'g (July 10, 2008).  However, everything in the record indicates that the GPS alerts are not hearsay.  Moreover, despite Mr. Grant's testimony that he received alerts on his screen, in addition to emails corroborating the alerts, the majority focuses on the "admissibility of BI's location information."  See Maj. Op. at 13.  Referring to the GPS alerts as "BI's location information" does not change the fact that the alerts were machine generated.  Indeed, Mr. Grant clarified that the emails were sent at the same time as the on-screen alerts.  Yet, the majority finds Mr. Grant's testimony "inconclusive."  See Maj. Op at 5.  In fact, Counsel for R.L.G. had ample opportunity to cross-examine Mr. Grant and simply failed to establish sufficient grounds for the hearsay objection.

generated measurements and objective data, treating the evidence as hearsay is inappropriate. Instead, issues under the rubric of expert testimony and authentication take predominance." Id. at § 246 (footnotes omitted).[11]

In Florida, the rule against hearsay is consistent with the age-old common law reasons for excluding out-of-court statements. Section 90.801(1)(c) defines hearsay as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted."[12] Hearsay, therefore, has two components: it is (1) an out-of-court *statement* and (2) offered to prove the truth of the matter asserted. With respect to the statement component, section 90.801(1)(b) provides that "[a] 'declarant' *is a person who makes a*

---

[11] See also Michael H. Graham, 6 Handbook of Fed. Evid. § 801.1 (9th ed. 2020) ("The hearsay rule is designed to protect against 'the four testimonial infirmities of ambiguity, insincerity, faulty perception, and erroneous memory.' Laurence H. Tribe, Triangulating Hearsay, 87 Harv. L. Rev. 957, 958 (March 1974). Computer-generated records do not implicate any of these four 'infirmities' when the evidence is not the product of human intervention. See, e.g., [State v. Armstead, 432 So. 2d 837, 840 (La. 1983)] ('With a machine, however, there is no possibility of a conscious misrepresentation [. . . .]').").

[12] As with many states, Florida's hearsay definition is substantively the same as the definition set forth in the federal rules of evidence. See L.L. v. State, 189 So. 3d 252, 255 (Fla. 3d DCA 2016) ("Where, as here, a Florida evidentiary rule is patterned after its federal counterpart, 'federal cases interpreting comparable provisions are persuasive and routinely looked to for interpretive guidance.'" (quoting Bank of N.Y. v. Calloway, 157 So. 3d 1064, 1071 n.3 (Fla. 4th DCA 2015))).

*statement*."  As such, hearsay can only come from a person.  This is not a trend; it is blackletter law.  See Charles W. Ehrhardt, <u>Fla. Prac., Evidence</u> § 801.2 (2020 ed.) ("*[O]nly statements by persons are treated as hearsay*. Evidence not generated by a person, such as a number displayed on caller ID, is not hearsay and is admissible if not excluded by the other exclusionary rules." (emphasis added)); 23 Fla. Jur. 2d <u>Evidence and Witnesses</u> § 274 ("With regard to hearsay, a declarant is a person who makes a statement.  Only statements made by persons fall within the definition of hearsay." (footnotes omitted)); <u>see also</u> 23 C.J.S. <u>Criminal Procedure and Rights of Accused</u> § 1167 (March 2021 Update) ("A computer is not a person and thus cannot be a declarant who makes a statement, and thus, computer self-generated data is not hearsay."); Graham, <u>supra</u> note 2, ("[A] statement must be made by a human, not a machine."); David H. Kaye et al., <u>The New Wigmore: Expert Evidence</u> § 5.3.6 (3rd ed. 2021) ("Machine-generated data are, by definition, not themselves hearsay."); Barbara E. Bergman et al., <u>2 Wharton's Criminal Evidence</u> § 6:1 (15th ed. 2020) ("As technology advances, the law must follow.  One example of this is the question of whether computer-generated records are hearsay.  Because the records are not generated by humans, they are not 'statements' within the meaning of the hearsay rules."); David F. Binder, <u>Hearsay Handbook</u> (4th

ed. 2020) ("Hearsay is limited to an out-of-court assertion of a person, as distinguished from a machine.").

This legal principle, which is recognized nationwide, has been applied by Florida courts. See, e.g., Wade v. State, 156 So. 3d 1004, 1024 (Fla. 2014) (holding that a US Marshal's testimony regarding cell phone call records was not based on hearsay because "phone company call lists are not out-of-court statements by a declarant");[13] Gayle v. State, 216 So. 3d 656, 660 (Fla. 4th DCA 2017) (explaining that a computer generated report that extracted text messages from a cell phone was "not a 'statement' made by a 'declarant,' and therefore is not hearsay"); Avilez v. State, 50 So. 3d 1189, 1192 (Fla. 4th DCA 2010) (explaining that a hotel key card report was not hearsay because it was not generated by a person); Bowe v. State, 785 So. 2d 531, 532 (Fla. 4th DCA 2001) ("[A] detective's in court testimony about a caller I.D. and a mobile pager's numerical display was not hearsay. This is because neither the pager nor the caller I.D. screen, like a radar or other similar machine able to give a readout, was a 'person' capable of being a 'declarant' within the definition of the hearsay rule." (citation omitted)).

---

[13] Wade cites an Eleventh Circuit Court of Appeals opinion in which the court "had no difficulty concluding" that Sprint billing records were "the statement of machines, not statements of persons." See United States v. Lamons, 532 F.3d 1251, 1264 (11th Cir. 2008).

24

Despite the established requirement that hearsay be a statement by a human declarant, R.L.G. contends four cases from our sister districts support his argument that GPS alerts from an electronic monitoring device are inadmissible hearsay.  See Channell v. State, 200 So. 3d 247 (Fla. 1st DCA 2016); Laing v. State, 200 So. 3d 166 (Fla. 5th DCA 2016); Edwards v. State, 60 So. 3d 529 (Fla. 2d DCA 2011); Ruise v. State, 43 So. 3d 885 (Fla. 1st DCA 2010).[14]  While I agree with R.L.G. that this is an issue of first impression for this Court, I respectfully disagree with his contention that our sister courts have ruled to the contrary.  The cases on which he relies are distinguishable.

The first in this line of cases is Ruise.  There, Appellant argued that GPS data from his monitoring device was inadmissible hearsay.  43 So. 3d at 886.  The State argued the GPS data was admissible under the business records hearsay exception.  Id.  Importantly, unlike here, *neither party addressed whether the GPS data was hearsay in the first place*.  The First

---

[14]  The majority cites Perez v Bell South, 980 So. 2d 1126 (Fla. 3d DCA 2008) and City of Miami v. Kho, 290 So. 3d 942 (Fla. 3d DCA 2019), neither of which is on point.  The issue in Perez was whether the trial court abused its discretion in allowing cellular telephone records custodians to testify that persons who placed cell phone calls would be within a certain distance from the cell towers identified with those calls.  980 So. 2d at 1131.  This Court held that said testimony was admissible as it constituted general background information that did not require expert testimony.  Id.  Kho dealt with the methods of authenticating photographic evidence.  290 So. 3d at 944-45.

District explained that GPS data was "clearly hearsay because it purports to show Appellant's locations on June 28, 2009, and it is being offered for the truth of the matter asserted . . . ." Id. Subsequent cases likewise hold that GPS data is hearsay when offered to prove the truth of the matter asserted. Though this is one component of hearsay, these cases do not address the more pertinent component, which requires an out-of-court statement *by a person*.

Moreover, unlike here, the evidence in these cases indicates some form of human involvement. In Ruise, for instance, the probation officer printed a report from a database, which the monitoring company *compiled* using GPS data from the monitoring device. 43 So. 3d at 887. Similarly, in Edwards, the probation specialist learned of the GPS alerts from a printed report from the monitoring company. 60 So. 3d at 530. In Channell, "the probation officer testified regarding the 'bracelet gone' alerts *from notes she had compiled from information received from the monitoring company*." 200 So. 3d at 249 (Fla. 1st DCA 2016) (emphasis added).

The majority cites a handful of cases from other jurisdictions in which courts have treated GPS data as hearsay that is admissible under the business records exception to the hearsay rule. As with the cases from our sister districts, the analysis in these cases is informed by the way in which

the parties framed the issue.  Often, the parties framed the issue as having

to do with whether or not GPS data is admissible under the business records

exception to the hearsay rule.  In none of the cited cases do the parties argue

that GPS data is not hearsay, nor do any of the courts address the hearsay

requirement of a statement by a person.[15]  Here, by contrast, the predicate

question of whether GPS data is hearsay is properly before the Court.

Numerous state and federal courts have concluded that GPS data from

a monitoring device is not hearsay.  See State v. Kandutsch, 799 N.W.2d

865, 877-79 (Wis. 2011) (holding that a report generated by an electronic

monitoring device defendant was wearing was not hearsay because it was

---

[15] In a recent case from Pennsylvania, which also involved GPS data from a monitoring device, the parties' arguments similarly focused on the business records exception to the hearsay rule.  See Commonwealth v. Shields, No. 266 EDA 2018, 2019 WL 3946007, at *10 (Pa. Super. Ct. Aug. 21, 2019). Recognizing "there is no need to satisfy an exception if the records are not hearsay in the first place[,]" the court declined to decide the issue, in part, due to "Appellant's failure to develop the predicate question . . . i.e., is GPS data even hearsay . . . ."  Id. at *11.  Cf. United States v. El Gammal, 831 Fed. Appx. 539, 543 n.7 (2d Cir. 2020) (assuming arguendo that statements by Facebook that defendant deleted messages at certain days and times were hearsay because that is how the issue was framed but noting that "the relevant assertion—the 'DELETED' data field—is not made by a person [and] may thus be more akin to a machine-generated record, which is unlikely to be considered hearsay").

not the product of human intervention);[16] Commonwealth v. Wallace, 244 A.3d 1261, 1272 (Pa. Super. Ct. 2021) ("[W]e conclude that, as it stands, GPS data automatically generated by a computer, free from interference by any person, does not constitute a 'statement,' and therefore, cannot qualify as hearsay.");[17] Haynes v. State, 77572-COA, 2019 WL 6770015, at *1 (Nev. App. Dec. 11, 2019) ("We conclude the district court did not abuse its

---

[16] Kandutsch quotes the US Department of Justice's manual for federal prosecutors, which explicitly mentions computer-generated GPS records as falling outside the hearsay rules:

> Hearsay rules apply to statements made by persons, not to logs or records that result from computer processes. Computer-generated records that do not contain statements of persons therefore do not implicate the hearsay rules. This principle applies both to records generated by a computer without the involvement of a person (e.g., *GPS tracking records*) and to computer records that are the result of human conduct other than assertions (e.g., dialing a phone number or punching in a PIN at an ATM).

799 N.W.2d at 799 (emphasis added) (quoting Computer Crime & Intellectual Prop. Section, Criminal Div., U.S. Dep't of Justice, Searching and Seizing Computers and Obtaining Electronic Evidence in Criminal Investigations, 192–94 (3rd ed. 2009)).

[17] Based on dictum in Wallace, the majority suggests that Florida's hearsay definition would need to be amended in order for non-human generated statements to be admitted outside of hearsay. As plainly set forth above, however, Florida's hearsay definition, like that in Pennsylvania, limits hearsay to statements by human beings.

discretion by admitting the GPS tracking app data because the app made the relevant assertion and there was no statement as defined by the hearsay rule."); People v. Rodriguez, 224 Cal. Rptr. 3d 295, 312-13 (Ct. App. 2017) (holding that GPS data generated from defendant's ankle monitor was not hearsay because it was not a statement of a person); Commonwealth v. Thissell, 910 N.E.2d 943, 946 (Mass. App. Ct. 2009), aff'd, 457 Mass. 191, 928 N.E.2d 932 (2010) ("It appears to us that the GPS documents consisting of maps and logs are not hearsay. Hearsay requires a statement, i.e., an oral or written assertion or . . . nonverbal conduct of a person, if it is intended by the party as an assertion." (citations and internal quotation marks omitted)); see also United States v. Murphy, 769 Fed. Appx. 631, 644 (10th Cir. 2019) ("[N]on-hearsay evidence from the GPS tracking device shows that Mr. Murphy's car made 45 visits to the stash location in a 12-day period."); United States v. Lizarraga-Tirado, 789 F.3d 1107, 1109 (9th Cir. 2015) (explaining that a location tack that is automatically placed by Google Earth based on GPS coordinates is not hearsay because it is not an assertion made by a person).

Given the definition of hearsay set forth in Florida's Evidence Code and Florida case law recognizing the requirement that hearsay must be a

statement by a person, I agree with the State's position in this case that the GPS alerts generated by R.L.G.'s monitoring device are not hearsay.[18]

Finally, although GPS data from a monitoring device is not hearsay and therefore should not be admitted under the business records hearsay exception, "[a]uthentication or identification . . . is required as a condition precedent to its admissibility."[19]  <u>See</u> § 90.901, Fla. Stat.  This requirement

---

[18] In his reply brief, R.L.G. raises for the first time the argument that the facts were insufficient to make a determination whether the alerts were automatically generated or manually sent by a person.  R.L.G. was the objecting party, and therefore, was required to establish the legal grounds for his objection below.  <u>See</u> <u>Fleitas v. State</u>, 3 So. 3d 351, 355 (Fla. 3d DCA 2008) ("Indeed, proper preservation requires the following three steps from a party: (1) a timely, contemporaneous objection; (2) a legal ground for the objection and; (3) '[i]n order for an argument to be cognizable on appeal, it must be the specific contention asserted as legal ground for the objection, exception, or motion below.'" (quoting <u>Harrell v. State</u>, 894 So. 2d 935, 940 (Fla. 2005)).

[19] Hearsay admitted under the business records exception and nonhearsay electronic evidence both require the proponent to lay a foundation before the evidence can be admitted.   Though some conflate these requirements, they are distinct.  <u>Compare</u> <u>Yisrael</u>, 993 So. 2d at 956 ("To secure admissibility under [the business records exception], the proponent must show that (1) the record was made at or near the time of the event; (2) was made by or from information transmitted by a person with knowledge; (3) was kept in the ordinary course of a regularly conducted business activity; and (4) that it was a regular practice of that business to make such a record.") <u>with</u> <u>State v. Love</u>, 691 So. 2d 620, 621 (Fla. 5th DCA 1997) ("Section 90.901. . . requires authentication or identification of evidence as a condition precedent to its admission as evidence. Prima facie evidence must be introduced in order to prove that the evidence is authentic. In order to set forth a prima facie case of authenticity, the proponent of the evidence can utilize both direct and circumstantial evidence. Evidence may be authenticated by appearance,

is "satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims." Id. Thus, if R.LG. doubted the reliability of the GPS alerts, he could have challenged their admissibility pursuant to section 90.901. However, that was not done in this case. Because the only issue before this court is whether the GPS alerts generated by a monitoring device are hearsay and not whether they were properly authenticated pursuant to section 90.901, I would affirm without further discussion of the authentication issue.

In conclusion, I would hold that the GPS alerts were not hearsay and were thus properly considered by the trial court, and therefore, there was competent substantial evidence to support the trial court's order finding R.L.G. in indirect criminal contempt. As such, I would affirm.

---

contents, substance, internal patterns, or other distinctive characteristics taken in conjunction with the circumstances.").